No. 3859

Second Circuit

(Second Division)

COX, SR., v. CROW
(L. C. BLACKWELL, Intervener and Third Opponent)

(November 18, 1931. Opinion and Decree.)

Clifford E. Hayes, of Minden, attorney for plaintiff, appellant.

Coleman Lindsey, of Minden, attorney for intervener and third opponent, appellee.

CULPEPPER, J. The only two contested issues in this case are, first, as to whether or not the person furnishing money with which to buy timber to be manufactured into cross-ties has a lien and privilege upon the ties, when manufactured, for the payment of the money thus advanced; and secondly, whether the furnishing of groceries, during the time the ties are being manufactured, to the person and his family for their support during the time he was engaged in the manufacture confers a privilege, when the allegation and the proof do not set forth and show that such supplies were sold for the specific purpose of and actually used in the process of manufacture.

Thomas L. Cox, Sr., plaintiff in main suit, obtained a judgment by confession against Thomas W. Crow, defendant, in the parish of Webster, for the sum of $150. Under a fi. fa. plaintiff caused to be seized and advertised for sale by the sheriff, 423 cross-ties belonging to defendant. L. C. Blackwell intervened, claiming a privilege under the provisions of Act 195 of 1912 upon the ties for various amounts aggregating the sum of $246.92 to cover for alleged advances to defendant, among which were the following two items in contest (quoting petition):

"That your appearer has a lien and privilege on the property (cross-ties under seizure) by reason of the fact that he furnished to defendant certain groceries for his support during the time he was engaged in the manufacture and hauling of said ties. * * * the amount thereof being ninety four & 22/100 dollars; * * * that your appearer advanced the defendant the funds necessary to pay for the timber used in the manufacture of said ties, being the sum of Forty-two & 30/100 Dollars; * * *"

Plaintiff in main suit filed an exception to the petition of intervention, of no right or cause of action, which was referred to the merits by the court. The case went to trial on the intervention, resulting in a judgment in favor of the intervener for the sum of $204.62, and ordering the sheriff to pay to intervener said amount out of the proceeds of the sale of the ties by preference and priority over all other persons.

By agreement of the parties the sheriff sold the ties and held the proceeds subject to the outcome of the trial and the rights of the parties were relegated to the proceeds. While the judgment is silent as to which item or items claimed were disallowed, we gather from briefs of counsel, and argument, that only the claim of $42.30 for money advanced with which to purchase the timber was disallowed.

Plaintiff in main suit, alone has appealed. Intervener filed an answer to the appeal asking that the judgment be amended so as to allow the claim of $42.30 disallowed by the lower court.

As shown by the briefs and argument of counsel, the only two remaining contested claims are those of $94.22 for alleged supplies of groceries and $42.30 for money advanced with which to purchase the timber from which the cross-ties were made.

There is no dispute as to the fact that

intervener advanced to defendant Crow the alleged sum of $42.30 as a loan with which to purchase the standing timber from which the ties were made. It is purely a question of whether under the interpretation of the Act 195 of 1912, sec. 3, such an advancement of money constitutes a lien. The section of the act reads as follows:

"That any person or persons furnishing supplies, provisions, or money, in deadening, felling, cutting, hauling, banking, driving, running, rafting or booming any log or timber, for the purpose of manufacturing telephone, telegraph poles and cross ties, or any of them, or in manufacturing telephone, telegraph poles, or cross ties, shall have a lien and privilege on same."

A reading of this section of the act sets forth the specific purposes for which, when money is advanced, a lien is created. Among these purposes named, no mention is made of money advanced for the purchase of timber for manufacturing telephone, telegraph poles or cross-ties. The provisions of the act seeking to create liens and privileges must be strictly construed, as is well settled by the law and jurisprudence of this state. If the lawmakers had intended to create a privilege on ties in favor of a person who furnishes money for the purpose of buying timber to be manufactured into cross-ties, they would necessarily have had to set it forth specifically in the statute. This act is the only statute on the subject, therefore, we think the trial judge correct in refusing to allow this particular claim.

The validity of the claim for $94.22 is more difficult to determine, due to the particular language in which the claim is set forth in intervener's petition, also the testimony introduced in support of it, when compared with the language of the act and the strict construction that must be placed upon it. It does seem that intervener could have made his position plainer both in his pleading and in his testimony.

The correctness of the itemized statement and amount of this account for groceries is not questioned. The point in question is whether these groceries were furnished in deadening, felling, cutting, hauling, banking, driving, running, rafting or booming any log or timber, for the purpose of manufacturing "the cross ties" "or any of them"—"or in manufacturing" same. Intervener's privilege, if he has one, arises under the above quoted section 3 of Act 195 of 1912. The crucial point is a question of fact as to whether the groceries sold by intervener to defendant were used in the process as a whole by which the cross-ties were manufactured, from the beginning of the deadening, felling and cutting of the timbers to the finally completed product. The lower court evidently, from its judgment allowing this claim, found that these groceries were in fact so used.

Plaintiff in main suit and defendant in the intervention, urges the point that intervener did not allege a cause of action in that it was not alleged that the groceries were used in the manner pointed out by the statute, but simply alleged that intervener "furnished to defendant certain groceries for his support during the time he was engaged in the manufacturing and hauling of said ties." Counsel argues that this phraseology cannot be construed to mean that the groceries were used in the process of the manufacture of the ties as required by the statute. The phrase "furnished to defendant certain groceries for his support during the time he was engaged in the manufacture (boldface by us) and hauling of said ties," is equivalent, we think, to saying the groceries were furnished "in the" process of manufactur-

ing them. The allegation that the groceries were for defendant's support while he was manufacturing the ties certainly means that they were used in the manufacturing process. We therefore think a cause of action is alleged.

The proof in support of the above allegation is that testified to by the defendant Crow. He testified that all of the groceries were furnished him during the time he was making the ties; that they consisted of flour, meal, lard, and were used by him and his wife. He says he lived "at home" during the time. When asked about a claim, his son, J. T. Crow, had and which had been assigned by his son to intervener, defendant Crow testified that the claim was correct; that it was for labor that his son had performed in making "these ties" and that his said son was staying at his (defendant's) house at the time. If the son, J. T. Crow, was staying at defendant's house, or home, he too was consuming these groceries from the common table of his father, while engaged in the labor of making, or helping to make, the ties. We conclude therefore, that the groceries in question were used in the manufacture of the ties seized. There is no evidence that defendant was engaged in any other business during the time these supplies were furnished him, from November 8 to December 18, 1929. Defendant did not testify specifically that he was engaged during that time at any other occupation, but intervener testified that defendant was engaged in nothing else that he knew of. "Nothing but making these ties."

We do not think there is any merit in the contention that there was a possibility that there were others consuming any of the supplies than the laborers engaged in the actual work. The only persons shown to have been living in defendant's home were defendant himself, his wife and the one son, J. T. Crow. The father and son made the ties while evidently the wife cooked the meals. The labor in cooking the meals was a very essential service to perform in the manufacturing of the ties, we must say.

For the reasons assigned, the judgment appealed from we think is correct, and is affirmed.